845 So.2d 570 (2003)
STATE of Louisiana
v.
Vernon ORANGE.
No. 2002 KA 0711.
Court of Appeal of Louisiana, First Circuit.
April 11, 2003.
*573 Walter Reed, District Attorney, Covington, Dorothy Pendergast, Special Appeals Counsel, Metairie, Counsel for Plaintiff-Appellee State of Louisiana.
James A. Williams, Gretna, Counsel for Defendant-Appellant Vernon Orange.
Before: PARRO, MCDONALD, and CLAIBORNE,[1] JJ.
CLAIBORNE, J.
The defendant, Vernon L. Orange, was charged by bill of information with armed robbery, a violation of La. R.S. 14:64. He entered a plea of not guilty. Following a hearing wherein doctor's reports were admitted in evidence, the court found the defendant competent to stand trial. The defendant later withdrew his plea of not guilty and entered a plea of not guilty and not guilty by reason of insanity. The defendant filed a motion to reopen the sanity commission, and the trial court granted said motion. Subsequently, the defendant withdrew his plea of not guilty and not guilty by reason of insanity and entered a plea of guilty. The trial court sentenced the defendant to forty years at hard labor without benefit of probation, parole, or suspension of sentence.
The defendant later filed an application for post conviction relief alleging that the trial court erred in failing to conduct a sanity hearing prior to the acceptance of his guilty plea. Upon contradictory hearing, the trial court granted the defendant's application and vacated the guilty plea and sentence. The district attorney gave notice of application for writs, and a return date was set. However, nothing in the record reflects that the application was ever filed. The trial court later appointed a sanity commission. After a hearing the trial court found the defendant competent to stand trial. A trial by jury subsequently resulted in a verdict of guilty as charged. The trial court denied the defendant's motion in arrest of judgment and motion for a new trial. Sentencing delays were waived, and the trial court imposed a sentence of forty years at hard labor without the benefit of probation, parole, or suspension of sentence. The defendant was then adjudicated a third felony offender and, again, waived sentencing delays. The trial court set aside the previous sentence and then imposed a sentence of life imprisonment without benefit of probation, parole, or suspension of sentence.
The defendant now appeals urging through counsel and in pro se brief that the trial court erred in failing to hold a competency hearing after alterations in the defendant's medication. In the defendant's second and third counseled assignments of error, he avers that the trial court erred in imposing a sentence greater than the sentence he received for his original, vacated conviction and that the trial court erred in applying the habitual offender law in effect at the time of the offense. In the second and third pro se assignments of error the defendant submits *574 that the trial court erred in denying the motion to obtain funds for an independent psychiatric evaluation and that the trial court erred in becoming a "non-impartial arbiter."

COUNSELED ASSIGNMENT OF ERROR NUMBER ONE AND PRO SE ASSIGNMENT OF ERROR NUMBER ONE
The defendant avers, in his first counseled assignment of error and first pro se assignment of error, that the trial court committed reversible error in failing to hold a competency hearing on the issue of the defendant's medications and his ability to assist counsel in his defense. The defendant submits that defense counsel informed the court of a negative change in the defendant's condition which may have been related to an alteration in medication. He also argues that, when the trial court requested a report concerning the change in medication from the doctors appointed to the defendant's sanity commission, the commission was in effect reinstated, and, thus, a second hearing should have been held.
If a defendant lacks the ability to communicate effectively with counsel, he may be unable to exercise other rights deemed essential to a fair trial. Cooper v. Oklahoma, 517 U.S. 348, 364, 116 S.Ct. 1373, 1381, 134 L.Ed.2d 498 (1996). Constitutional due process requires that the trial of an accused be conducted only when he is legally competent. State v. Nomey, 613 So.2d 157, 161 (La.1993). A legal presumption exists that the defendant is sane and responsible for his actions. La. R.S. 15:432. Hence, the defendant has the burden to establish by a preponderance of the evidence his incapacity to stand trial. State v. Howard, 98-0064, pp. 3-4 (La.4/23/99), 751 So.2d 783, 791-792, cert. denied, 528 U.S. 974, 120 S.Ct. 420, 145 L.Ed.2d 328 (1999). See Cooper v. Oklahoma, 517 U.S. at 355, 116 S.Ct. at 1377. The two-fold test of capacity to stand trial is whether the defendant: (1) understands the nature and consequences of the proceedings against him, and (2) has the ability to assist in his defense by consultation with counsel. Drope v. Missouri, 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975); State v. Bennett, 345 So.2d 1129, 1138 (La.1977) (on rehearing). While a court may receive the aid of expert medical testimony on the issue of competency to proceed, the ultimate decision of capacity rests with the trial court. La.Code Crim. P. arts. 647, 648; State v. Rogers, 419 So.2d 840, 843 (La.1982). Given the presumption of sanity, before the court is required to appoint a sanity commission, the defendant must establish by a preponderance of the evidence that reasonable grounds exist to doubt his mental capacity to proceed. State v. Bickham, 404 So.2d 929, 934 (La.1981). A reviewing court owes the trial court's determination on these matters great weight, and the trial court's ruling will not be disturbed on appeal absent a clear abuse of discretion. State v. Bridgewater, 00-1529, p. 14 (La.1/15/02), 823 So.2d 877, 892.
In Pate v. Robinson, 383 U.S. 375, 385, 86 S.Ct. 836, 842, 15 L.Ed.2d 815 (1966), the Court held that the failure to observe procedures adequate to protect a defendant's right not to be tried while incompetent deprives him of his due process right to a fair trial. If there is a sufficient doubt as to the mental competency of an accused, the trial court has a responsibility to order a hearing sua sponte. Griffin v. Lockhart, 935 F.2d 926, 929 (8th Cir.1991). The Pate procedural guarantee is violated when, in light of what was then known to the trial court, the failure to make further inquiry into defendant's competence to stand trial denied *575 him a fair trial. Lokos v. Capps, 625 F.2d 1258, 1261 (5th Cir.1980) (citing Drope, 420 U.S. at 174-175, 95 S.Ct. at 905). The relevant question is: "Did the trial judge receive information which, objectively considered, should reasonably have raised a doubt about defendant's competency and alerted him to the possibility that the defendant could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense." Lokos, 625 F.2d at 1261.
In the instant case, the defendant was initially found competent to stand trial by a sanity commission appointed in 1996. On May 12, 1997, the defendant withdrew his not guilty plea and entered a plea of not guilty and not guilty by reason of insanity. He later withdrew this plea and entered a plea of guilty. After filing for post-conviction relief, the defendant was allowed to withdraw his guilty plea, and a trial date was set. The trial court appointed a second sanity commission to assist in the evaluation of the defendant's competence to stand trial and sanity at the time of the offense. The sanity commission consisted of Dr. John W. Thompson and Dr. Rafael Salcedo. Both doctors conducted an examination of the defendant prior to the second sanity hearing and reviewed information concerning the defendant's mental status. Dr. Salcedo also previously examined the defendant in 1996 and found him to be competent.
The trial court held the second sanity hearing on April 23, 2001. At the hearing, although the defendant had informed the doctors that he had difficulty remembering the events surrounding the offense in question, both doctors stated that they were confident in the defendant's ability to understand the proceedings and assist his counsel. When asked to describe the defendant's abilities and understandings of the courtroom, court personnel, court functions and legal system in general, Dr. Thompson stated that the defendant had "excellent understanding." Dr. Salcedo described the defendant's knowledge of the criminal justice system as above average.
At the time of the examinations, the defendant was taking antipsychotic (Risperdal) and antidepressant (Zoloft) medications. On cross-examination, the following colloquy took place between the defense counsel and Dr. Thompson:
Q. Now, what about if he's not able to take these medications? Specifically, the Risperdal. Do you feel that might cause a problem if he wasn't allowed to take these medications in terms of his ability to aid and assist me and to understand what's going on?
A. Well, you have to take him off the medication and see how he did. It may affect him and it may not. Some individuals stop their medications and they don't have a lot of effects. Others do and they do have effects. (emphasis added).
Both doctors, also on cross-examination, agreed that if the defendant stopped taking his current medication, the issue of competency to stand trial should be revisited. At the conclusion of the hearing, the trial court found the defendant competent to stand trial and ordered that he continue taking the medication that was currently prescribed pending the trial. Subsequently, the trial court signed joint motions by the state and defense to medicate the defendant which stipulated the prescriptions and dosages to be given the defendant.
A letter dated May 22, 2001, from Dr. Galvan of the St. Tammany Parish Jail Medical Department informed the court of minor alterations in the defendant's medical treatment. On July 27, 2001, the defendant filed a motion to order mental examination based on the alterations in medication. The motion suggested that *576 defense counsel was having difficulties in preparing for trial due to mood swings, lack of attention, anger, and the physical condition of the defendant. The trial court first heard arguments in support of this motion on its filing date. The court concluded that it would not be necessary to conduct another hearing on the issue of competency and did not feel that the changes in medication would affect the defendant's ability to assist his counsel. The court stated that it would go forward. The trial judge also stated that he would allow a request for a report to address the defense counsel's questions concerning the alteration in medication and the effect, if any, this would have as to the doctors' previous competency determination. The record is unclear as to whether any such report was ever received or reviewed by the court, and in his brief on appeal, the defendant represents such reports were never prepared.
The fact that the trial judge ordered a report from the doctors previously appointed to the sanity commission was not a reinstatement or re-appointment of the sanity commission. It was an effort by the trial court to determine whether there was sufficient reason to require re-appointment of a sanity commission to be followed by a sanity hearing. The court by other means, including statements of Dr. Galvan and defense counsel, was eventually satisfied that no such reason existed.
This issue was revisited after the jury voir dire when defense counsel filed a motion for continuance. The defense counsel stated that he had been informed by the defendant that the antidepressant that he had been taking, Zoloft, was discontinued for a seven-day period and replaced by a different antidepressant called Remeron. Defense counsel also submitted that the defendant's medications for stomach and back pains had been discontinued. He confirmed, however, the antipsychotic drug, Risperdal, had been maintained. The defense counsel stated that during that seven-day period the defendant was unable to assist him with the preparation of trial. On this basis, he requested a continuance.[2]
The defense counsel, James A. Williams, stated that following that seven-day period, and for two weeks prior to trial, the defendant's condition improved. When questioned as to the return of the defendant's ability to assist his counsel, the following colloquy took place:
BY MR. WILLIAMS:
I would say, Judge, the last couple of weeks. The last two times I've been there he has been okay.
BY THE COURT:
Okay in the sense he's been able to assist you in his defense?
BY MR. WILLIAMS:
Yes, sir. That's correct.
BY THE COURT:
And he completely understands the proceedings and what's going on today?
BY MR. WILLIAMS:
He, I believe, Judge, has always understood the nature of the proceedings against him, but his ability to communicate with me, I believe as an officer of the Court, I'll report to the Court for the period of time when his medicines were changing, he was not able to aid and assist me and there was a great deal
BY THE COURT:

*577 So prior to that he was, for a short period he was not, and then he was again?
BY MR. WILLIAMS:
That's correct, Judge.
* * *
BY THE COURT:
You're telling me that today he is, in your opinion, fully able to assist you in the defense of his trial?
BY MR. WILLIAMS:
Absolutely, Judge....
The trial court reiterated its denial of the motion for mental re-examination and stated that its earlier denial was on the basis that there was no change in medication that would affect the defendant's competency to stand trial as there were no changes in the defendant's antipsychotic medication. The trial court also noted that defense counsel indicated that the defendant had been able to assist counsel for at least ten days prior to the trial. Defense counsel did not re-urge the motion for mental examination and reminded the trial judge that the issue was only revisited in the context of his motion for a continuance due to the time period during which the defendant was unable to assist him.
We find no abuse of discretion as to the trial court's decision regarding the defendant's competency to stand trial. The letter from Dr. Galvan provided the court with the specific medications that the defendant was taking and the minor alterations that took place in the antidepressant medication, i.e., the withdrawal and/or reduction in dose of Zoloft. The letter stated that the Zoloft medication was discontinued on April 30, 2001, and restarted on May 7, 2001. This was the seven-day period in which the defense counsel noted a change in the defendant's behavior. On May 21, 2001, the dosage of Zoloft was decreased from 100 milligrams to 50 milligrams per day due to side effects. The letter clearly provided that the defendant's antipsychotic treatment had not been altered since the examination by the members of the sanity commission. Defense counsel's questioning of the members of the sanity commission at the sanity hearing concerning a change in the defendant's medication was specifically in reference to the defendant's antipsychotic medication. Furthermore, defense counsel clearly represented to the court that the defendant was able to assist him and understood the proceedings against him at the time of the trial. These assignments lack merit.

COUNSELED ASSIGNMENT OF ERROR NUMBER TWO
In the second counseled assignment of error, the defendant avers that the trial court erred by imposing a sentence greater than the sentence appellant received for his original, vacated conviction. He specifically claims that the state did not seek habitual offender adjudication against the defendant after his original conviction following his previously entered and later withdrawn guilty plea, but, however, did so after the defendant was found guilty after trial by jury.
La. R.S. 15:529.1 D(1)(a) provides in part that:
If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state ... or has been convicted under the laws of any other state, or of the United States, or of any foreign government or country, of a crime, which, if committed in this state would be a felony, the district attorney of the parish in which subsequent conviction was had may file an information accusing *578 the person of a previous conviction.... (emphasis added).
Additionally, Code of Criminal Procedure article 61 provides as follows:
Subject to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute.
The discretion to charge a defendant under the habitual offender law lies with the district attorney. State v. Carter, 610 So.2d 972, 975 (La.App. 1st Cir.1992); see also La. R.S. 15:529.1. A defendant may be charged as an habitual offender at any time, even after conviction and sentence. La. R.S. 15:529.1 D.
Thus, a district attorney has great discretionary power to file an habitual offender bill under La. R.S. 15:529.1 D, just as he has the initial unlimited power to prosecute "whom, when, and how" he chooses. State v. Dorthey, 623 So.2d 1276, 1279 (La.1993). His use of the habitual offender laws simply provides an ancillary sentencing factor designed to serve important and legitimate societal purposes. See State v. Youngblood, 26,722, pp. 3-4 (La. App.2d Cir.12/22/94), 647 So.2d 1388, 1390, writ denied, 95-0221 (La.3/17/95), 651 So.2d 277. Furthermore, the use of the habitual offender law will not create a presumption of prosecutorial vindictiveness. The events in the course of prosecution will only create a presumption of vindictiveness if, to a reasonable mind, the filing of the habitual offender bill can be explained only by a desire to deter or punish the exercise of legal rights. See State v. Stewart, 27,049, pp. 4-5 (La. App.2d Cir.5/10/95), 656 So.2d 677, 680-681, writs denied, 95-1764 & 95-1768 (La.12/8/95), 664 So.2d 420. There is no merit in this assignment of error.

PRO SE ASSIGNMENT OF ERROR NUMBER TWO
The defendant's second pro se assignment of error presents the contention that the trial court erred in denying the defendant's motion to obtain funds for an independent psychiatric evaluation regarding the issue of his insanity at the time of the commission of the offense. The defendant argues that the trial court's actions denied him the right to prepare a defense and properly place the true nature of his mental illness before the jury.
An accused has a constitutional right to present a defense. Washington v. Texas, 388 U.S. 14, 18-19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967); La. Const. art. I, § 16 (1974). Nonetheless, State v. Thomas, 310 So.2d 517, 522 (La.1975) stands for the proposition that our statutory procedure is not constitutionally infirm because it does not afford the defendant the right to have the state pay for an independent psychiatric examination.
In the instant case, as previously discussed, the trial court appointed a sanity commission to report on both the defendant's mental capacity to stand trial and his mental capacity at the time of the offense. Dr. John W. Thompson of Tulane University in New Orleans, Louisiana and Dr. Rafael Salcedo, forensic clinical psychologist, were appointed to carry out this task. Dr. Thompson was determined to be an expert in the field of forensic psychiatry, and Dr. Salcedo was determined to be an expert in the field of forensic psychology. Dr. Salcedo and Dr. John Paul Pratt, an expert in the field of forensic psychiatry, testified during the trial. Both doctors concluded that the defendant did not suffer from any condition that would have compromised his ability to distinguish between right and wrong at the time of the *579 offense. Both doctors conducted separate psychiatric interviews with the defendant, viewed a videotape of the incident in question, and reviewed other documents concerning the defendant's mental status. The defense counsel cross-examined Dr. Salcedo and Dr. Pratt concerning the defendant's mental capacity at the time of the offense.
The defendant relies on Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), as authority for the proposition that he is entitled to an independent psychiatric evaluation and his contention that the trial court erred in denying funds to obtain such evaluation. However, the holding in Ake specifically provides as follows:
We therefore hold that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed, and as in the case of the provision of counsel we leave to the State the decision on how to implement this right.
Ake, 470 U.S. at 83, 105 S.Ct. at 1096.
We find no abuse of discretion in the trial court's denial of the defendant's motion requesting the court to provide funds for an independent psychiatric evaluation. The defendant was allowed sufficient access to competent psychiatrists, and appropriate examinations were conducted. This assignment is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER THREE
In the third and final pro se assignment of error, the defendant avers that his Sixth, Eighth, and Fourteenth Amendment rights under the United States Constitution were violated by acts of vindictive prosecution and sentencing. The defendant argues that the first act of vindictiveness occurred when his bond was raised, after his application for post-conviction relief was granted, from the original $50,000.00 to $750,000.00. He secondly argues that the trial court erred in allowing the defendant's case to proceed to trial without holding a second hearing after changes in his medication occurred. Thirdly, the defendant states that the trial court was vindictive in denying him the use of an independent state-appointed expert to assist him in preparing and presenting a proper defense. Finally, the defendant avers that the trial court was vindictive in failing to consider his mental condition as a mitigating factor in sentencing.
At the outset, we note that the issues presented in the second and third contention of vindictiveness have been discussed in previous assignments. This court finds no merit in the defendant's argument regarding these issues, and there is no need to discuss them again. As to the first and final issues presented, although we note that the defendant has not presented a clear legal argument in support thereof, we will, nevertheless, address these matters briefly.
Where no presumption applies, the defendant must affirmatively prove actual vindictiveness. Wasman v. United States, 468 U.S. 559, 569, 104 S.Ct. 3217, 3223, 82 L.Ed.2d 424 (1984). The defendant *580 has failed to produce any evidence of vindictiveness on the part of the trial court or on the part of the prosecution. The defendant's legal discussion seems to focus on prosecutorial vindictiveness. However, he has not provided a factual basis for such a contention. The defendant's claims as to the trial court's vindictiveness in increasing his bond and in imposing sentence is neither supported by the record nor developed in brief. We note that the trial court was fully aware of the defendant's mental capacity at the time of the sentencing. This assignment lacks merit.

COUNSELED ASSIGNMENT OF ERROR NUMBER THREE
In the third and final counseled assignment of error, the defendant avers that the trial court erred in applying the habitual offender law in effect at the time of the offense, rather than the version of the law in effect at the time of the conviction.
The bill of information provides that the instant offense, armed robbery (in violation of La. R.S. 14:64), occurred on March 21, 1996. The defendant was convicted on August 17, 2001, and adjudicated as a third felony offender and sentenced on November 15, 2001. The defendant's predicate offenses consisted of guilty pleas to armed robbery, in violation of La. R.S. 14:64, and attempting to obtain possession of a controlled dangerous substance by misrepresentation, fraud, forgery, deception, or subterfuge, in violation of La. R.S. 40:971 B(1)(b). In 2001 La. Acts, No. 403, § 2, effective June 15, 2001, the Legislature amended La. R.S. 15:529.1 to require a life sentence for a third felony offender only if the third and both of the predicate offenses were crimes of violence, drug offenses punishable by imprisonment for more than ten years, and/or other types of offenses not applicable herein. Thus, applying the habitual offender law in effect at the time of the conviction and sentencing, the defendant would not be subject to a life sentence, since his prior drug offense was punishable by imprisonment for up to five years. However, the habitual offender law in effect at the time of commission of the instant offense required that only one of the felonies be defined as a crime of violence and mandated the imposition of a sentence of life imprisonment.
The recent case of State v. Mayeux, 01-3195 (La.6/21/02), 820 So.2d 526, applied the penalty provision of the 2001 amendment, by 2001 La. Acts, No. 1163, to La. R.S. 14:98 E (fourth-offense DWI) to an offense that occurred before the amendment. In that case the Louisiana Supreme Court concluded that although the amended version of La. R.S. 14:98 does not specifically mention the "retroactivity" of the new provisions, the statute contains three provisions which suggest that the amended version should apply in the case. Mayeux, 01-3195 at pp. 4-6, 820 So.2d at 529-530. While the Mayeux case is distinguishable because it did not deal with the provisions of LSA-R.S. 15:529.1, a similar analysis is applicable. See State v. Parker, 02-1477 (La.App. 1st Cir.3/05/03), 845 So.2d 546. State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518, and the cases therein relied upon, did not deal with a habitual offender adjudication. For the reasons stated in State v. Parker, we conclude that the law in effect at the time of the adjudication is applicable. Therefore, the sentence must be vacated and the matter remanded for re-sentencing.
CONVICTION AND HABITUAL OFFENDER ADJUDICATION AFFIRMED. SENTENCE VACATED. CASE REMANDED FOR RESENTENCING.
*581 MCDONALD, J., concurs in part, and as to the applicable date of the habitual offender law, dissents in part for reasons given in State v. Parker, 2002 KA 1477 decided March 5, 2003.
NOTES
[1] Judge Ian W. Claiborne, retired, is serving as judge pro tempore by special assignment of the Louisiana Supreme Court.
[2] The trial court's denial of the defendant's motion for continuance is not at issue on appeal.