CARLTON, J.,
for the Court:
¶ 1. Helen Rogillio appeals the judgment of the Warren County Chancery Court granting an irreconcilable-differences divorce to her and her husband, David Ro-gillio, and awarding Helen $15,000 in lump-sum alimony. Helen appeals, arguing that the chancellor erred by awarding lump-sum alimony instead of permanent periodic alimony. Finding no error in the chancery court’s judgment, we affirm the chancellor’s award of lump-sum alimony.
FACTS
¶ 2. Helen and David were married in September 1997. One child was born to the marriage, a son, who was approximately six years old at the time of the divorce. Helen and David separated in March 2007, when David and the couple’s son left the family home and moved in with David’s parents. Although the chancellor granted the divorce on the grounds of irreconcilable differences, ■ David contends that he left the marital home because Helen exhibited bizarre behavior and used illegal drugs.
¶ 3. Helen and David agreed that David would have primary custody of their minor • child and that David and the child would reside in the marital home. Helen agreed to move into a mobile home that she owned prior to the marriage. The mobile home was in need of numerous repairs. Helen was to receive exclusive use, possession and ownership of the property, and the sole responsibility for the mortgage on the property. Further, the chancellor awarded David $436 per month in child support in the form of a social security check the child received as a result of Helen’s disability. David received the sole use, possession and ownership of the marital home, and any equity in the home. David was further assigned responsibility for the first and second mortgages on the marital home.
¶ 4. David was also given responsibility for various other marital debts. David received ownership of a Thrift Savings Plan, his PERS retirement account, and the checking and savings accounts. The chancellor ordered David to pay Helen $2,038.61 in marital assets, $4,807 for the debt on her credit cards, and lump-sum alimony in the amount of $15,000.
¶ 5. On appeal, Helen contends that the chancellor erred in not awarding her permanent periodic alimony. Both David and Helen are in their forties. Helen is a registered nurse. However, she had to stop working in 1998 because she suffers from neurofibromatosis, which she says causes her constant pain. During the course of her marriage to David, Helen required more than ten surgeries to remove tumors from various parts of her body as a result of her illness. Helen receives $770 per month in Social Security disability benefits, and this check is Helen’s only source of income.
¶ 6. David, on the other hand, is in good health and has secure employment as an engineer for the Army Corps of Engineers in Vicksburg. David earns approximately $83,372 per year. Because Helen felt that it was in her son’s best interest to remain with his father, she agreed to move out of the marital home and into a mobile home she owned prior to the marriage that she rented out during the course of the marriage. The mobile home is in need of approximately $7,725 in repairs. Helen pays $420 per month for the mobile home and insurance. Further, Helen pays $150 per month in rent for the lot on which the mobile home sits. However, at the time she filed this appeal, she had fallen sixteen months behind in making this rental payment.
*24 STANDARD OF REVIEW
¶ 7. “A chancellor’s findings of fact mil not be disturbed unless manifestly wrong or clearly erroneous.” Sanderson v. Sanderson, 824 So.2d 623, 625 (¶ 8) (Miss.2002) (citation omitted). “This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his [or her] discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.” Id. at 625-26 (¶ 8) (citation omitted).
DISCUSSION
I. Helen’s Award of Lump-Sum Alimony
¶ 8. Helen argues that after the property division, a gross disparity between her needs and her resources requires that she receive permanent periodic alimony from David. David, however, argues that Helen only “claims” to be disabled; she drinks excessively; and she could work if she chose to do so. To support his contention that Helen perhaps exaggerated her disability, David notes that Helen sought and received possession and ownership of an off-road ATV 4-wheeler and scuba-diving equipment in the divorce proceedings. Helen admitted at the divorce hearing that she frequently rode the ATV on rough terrain and that she was physically able to scuba dive. However, on re-direct examination, Helen stated that she was unable to scuba dive due to her disability.
¶ 9. The Mississippi Supreme Court has expressed that alimony should be considered only “[i]f the situation is such that an equitable division of marital property, considered with each party’s nonmarital assets, leaves a deficit for one party.” Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994). Since the decision to award alimony, and the amount thereof, is a matter of discretion for the chancellor, we will review the chancellor’s award of lump-sum alimony for abuse of discretion and will only disturb the ruling if it is found to be against the overwhelming weight of the evidence or manifestly in error. Pearson v. Pearson, 761 So.2d 157, 165 (¶ 25) (Miss.2000).
¶ 10. In the present case, the record reflects that the chancellor utilized the guidelines set forth in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994) to equitably divide David and Helen’s marital property. In Ferguson, the Mississippi Supreme Court instructed chancery courts to equitably divide marital assets by following a nonexclusive list of eight guidelines and “to support their decisions with findings of fact and conclusions of law for purposes of appellate review.” Id. The supreme court further outlined the steps for applying the equitable-distribution factors as listed in Ferguson, stating:
First, the character of the parties’ assets, i.e., marital or nonmarital, must be determined pursuant to Hemsley. The marital property is then equitably divided, employing the Ferguson factors as guidelines, in light of each parties’ non-marital property. Ferguson, 639 So.2d at 928. If there are sufficient marital assets which, when equitably divided and considered with each spouse’s nonmari-tal assets, will adequately provide for both parties, no more need be done. If the situation is such that an equitable division of marital property, considered with each party’s nonmarital assets, leaves a deficit for one party, then alimony based on the value of nonmarital assets should be considered. This process does not require divestiture of inherited or gift-acquired nonmarital property.
Johnson, 650 So.2d at 1287.
¶ 11. Upon review of the record before us, we find that the chancellor properly *25 classified the parties’ assets as marital or nonmarital, pursuant to Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994). The chancellor then applied the Ferguson factors to the parties’ assets, listing in the judgment her findings of fact and conclusions of law. Ultimately, the chancellor held that the marital home should be awarded to David, and the parties’ marital assets divided equally. The chancellor then divided the parties’ debt, leaving David with $177,934.10 of the debt and Helen with $67,699.10 of the debt. The chancellor determined:
If we subtract Helen’s marital assets from her marital debts, her remaining debts total $33,410.39. If we subtract Helen’s mortgage from this debt, her remaining debts total $10,493.39. Helen has equity in the mobile home valued at $18,083.00 and remaining marital assets totaling $2,038.61. Thus, her net value, excluding the mortgage of the mobile home, is $9,628.22.
¶ 12. The chancellor, recognizing that the marital assets, after equitable division, would leave Helen with “certainly an equitable deficit,” determined that alimony should be considered. The chancellor determined Helen’s monthly income to be $777.[1] When determining whether to award alimony, chancellors are guided by the twelve factors set forth by the supreme court in Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). These factors include:
(1) the income and expenses of the parties; (2) the health and earning capacities of the parties; (3) the needs of each party; (4) the obligations and assets of each party; (5) the length of the marriage; (6) the presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care; (7) the age of the parties; (8) the standard of living of the parties, both during the marriage and at the time of the support determination; (9) the tax consequences of the spousal support order; (10) fault or misconduct; (11) wasteful dissipation of assets by either party; or (12) any other factor deemed by the court to be “just and equitable” in connection with the setting of spousal support.
Ward v. Ward, 825 So.2d 713, 718 (Miss.Ct.App.2002) (citing Armstrong, 618 So.2d at 1280).
¶ 13. After applying the Armstrong factors to the facts before her, the chancellor found that lump-sum alimony should be considered to resolve Helen’s deficit and allow her a fresh start. When awarding lump-sum alimony, the supreme court has established certain factors to be considered by the chancellor:
1) substantial contribution to the accumulation of total wealth of the paying spouse either by quitting a job to become a housewife, or by assisting in the paying spouse’s business; 2) length of the marriage; 3) separate income of the recipient spouse as compared to that of the paying spouse; and 4) financial security of the recipient spouse absent the lump[-]sum payment.
Haney v. Haney, 788 So.2d 862, 865 (¶ 10) (Miss.Ct.App.2001) (citation omitted). We also note that “the single most important factor is the disparity of the separate estates.” Id. In the case before us, we find that the chancellor did not abuse her dis *26 cretion in considering the Cheatham[2] factors when determining whether an award of lump sum alimony was appropriate. The chancellor provided an analysis of her application of the Cheatham factors in her judgment, finding that:
1. Substantial contribution to accumulation of total wealth of the pay- or either by quitting a job to become a housewife, or by assisting in the spouse’s business: Although Helen did not substantially contribute to David’s accumulation of wealth, she did work for a couple of years during the marriage, and contributed the money received from the rent of the mobile home, as well as her public assistance benefits, to the marriage.
2. A long marriage: An eleven[-]year marriage is long enough to qualify for an award of lump[-]sum alimony. Creekmore.[3]
3. Where the recipient spouse has no separate income or the separate estate is meager in comparison: Helen’s public assistance and estate is meager in comparison to David’s.
4. Without the lump[-]sum award the receiving spouse would lack any financial security: Most of the repairs needed to the mobile home must be made before Helen can move into it. Without a lump[-]sum award, Helen is unable to pay for the necessary repairs to the mobile home while at the same time paying the mortgage. In other words, without financial assistance, Helen cannot obtain financial security.
It appears to the court that, from the information provided, David is able to pay an award of lump[-]sum alimony and still be able to live a normal life under a reasonable standard of living. The court believes that an appropriate amount of lump[-]sum alimony is an amount that would allow Helen a fresh start. A fresh start would be one in which Helen would not have any debts other than the mobile home mortgage. Thus, the court awards Helen lump[-]sum alimony in the amount of $15,000.00.
In sum, the chancellor’s findings reflect that the alimony awarded eliminated Helen’s “equitable deficit.”
¶ 14. Helen argues that the chancellor’s Armstrong analysis actually showed that the majority of the factors favored an award of permanent periodic alimony, and the chancellor erred in deciding upon an award of lump-sum alimony. Helen cites Monroe v. Monroe, 612 So.2d 353, 357 (Miss.1992), where the supreme court upheld an award of permanent periodic alimony due to Mrs. Monroe’s disability and inability to seek employment, even where the husband was responsible for raising the two children. However, we note that the facts in Monroe differ significantly from those before us. This Court found that Mrs. Monroe supported the couple for the first eleven years of their seventeen-year marriage, enabling Mr. Monroe to pursue an undergraduate degree and a medical degree. Id. at 358. At one point, when Mr. Monroe was in medical school, Mrs. Monroe worked three jobs to support the family. Id. She also withdrew the balance of her pension fund to pay the family’s expenses. Id. The supreme court thus determined that Mrs. Monroe should be entitled to the benefits of her eleven years of work as the bread-winner of the family. Id. In contrast, the record in the present case shows that Helen only worked a couple of years during the mar *27 riage, and she did not substantially contribute to David’s accumulation of wealth. We also note that Helen receives a monthly disability payment.
¶ 15. After reviewing the record before us, we note that the chancellor appropriately utilized the Ferguson factors, as mandated by the supreme court, to determine the equitable division of David and Helen’s marital property. The chancellor also determined Helen’s need for alimony by applying the Armstrong factors, subsequently finding that an award of lump-sum alimony was proper to resolve Helen’s needs by eliminating her debt, thereby providing financial security to Helen.
¶ 16. We find that the chancellor conducted a thorough factual analysis of Helen’s need for alimony after equitable division of marital property by using the factors set forth by the Mississippi Supreme Court. The chancellor’s analysis and findings are supported by the record in this case. As stated, we will not disturb a chancellor’s findings regarding the amount of alimony absent an abuse of discretion. Thus, after careful review, we find that the record does not reflect that the chancellor abused her discretion in awarding Helen lump-sum alimony. This issue is without merit.
II. Award of Attorney’s Fees on Appeal
¶ 17. In her appellee brief, Helen requests attorney’s fees for the services rendered in connection with this appeal. However, we find that the issue of attorney’s fees is proeedurally barred on appeal because Helen failed to cite any relevant authority to support her argument. Ruff v. Estate of Ruff, 989 So.2d 366, 372 (¶ 24) (Miss.2008).
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF WARREN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., GRIFFIS, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. KING, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. Helen receives approximately $9,324 a year ($777 a month) in disability payments as her only source of income.

. Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988).

. Creekmore v. Creekmore, 651 So.2d 513, 517 (Miss.1995).