STATE OF LOUISIANA

VERSUS

OSIRIS L. SCOTT

NO. 22-KA-330

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 21-848, DIVISION "G"
HONORABLE E. ADRIAN ADAMS, JUDGE PRESIDING

March 15, 2023

**ROBERT A. CHAISSON**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Robert A. Chaisson, and Stephen J. Windhorst

**AFFIRMED**
  **RAC**
  **SJW**

**DISSENTS, IN PART, WITH REASONS**
  **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
     Honorable Paul D. Connick, Jr.
     Thomas J. Butler
     Anne M. Wallis
     Zachary L. Grate

COUNSEL FOR DEFENDANT/APPELLANT,
OSIRIS L. SCOTT
     Bruce G. Whittaker

**CHAISSON, J.**

Defendant, Osiris L. Scott, appeals the trial court's denial of his motions to suppress identification and inculpatory statements. For the reasons that follow, we find no abuse of discretion in the trial court's rulings, and accordingly, we affirm defendant's convictions and sentences.

## PROCEDURAL HISTORY

On March 18, 2021, the Jefferson Parish District Attorney filed a bill of information charging defendant with armed robbery with a firearm, in violation of La. R.S. 14:64 and 14:64.3(A) (count one), and possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1 (count two). Defendant pled not guilty at his arraignment on April 6, 2021. Defendant thereafter filed pre-trial motions, including a motion to suppress confession, identification, and physical evidence. On October 21, 2021, the trial court heard and denied defendant's suppression motions.

On February 14, 2022, defendant withdrew his not guilty pleas and, after being advised of his rights, pled guilty as charged pursuant to *State v. Crosby*, 338 So.2d 584 (La. 1976), thereby reserving his right to appeal the denial of his suppression motions. In accordance with the plea agreement, the trial court then sentenced defendant, on count one, to twenty-five years imprisonment at hard labor with a consecutive five-year sentence for the firearm enhancement, and on count two, to twenty years imprisonment at hard labor. All sentences were ordered to be served without benefit of parole, probation, or suspension of sentence, and the two counts were ordered to run concurrently. Defendant now appeals the trial court's denial of his motions to suppress identification and inculpatory statements.

22-KA-330                                        1

# FACTS[1]

At the suppression hearing, Detective Eric Hymel of the Jefferson Parish Sheriff's Office testified regarding the circumstances that led to the apprehension and arrest of defendant for the charged offenses. According to Detective Hymel, on January 27, 2021, officers from the Jefferson Parish Sheriff's Office responded to a 9-1-1 call regarding an armed robbery carjacking in Jefferson Parish. Upon arrival at the scene, the officers learned from the victim that at approximately 7:00 a.m., she and her two children left their residence in her vehicle, traveled about two blocks, and then stopped at the corner of Barataria Boulevard and Pritchard Road. While stopped, the victim was approached by a black male in dark clothing, who ordered her and her children, at gunpoint, to exit the vehicle. The victims complied, at which point the suspect took the vehicle and fled the area.[2] The victim also reported to the officers that her purse and some debit cards located inside her vehicle were taken in the robbery.

After receiving this information from the victim, the officers obtained surveillance videos that showed the vehicle fleeing the area. Additionally, the officers ran the victim's license plate number through the automated license plate reader system, which showed the vehicle in New Orleans at approximately 1:30 p.m. To further their investigation, officers also obtained the victim's banking records, which revealed that some of the victim's credit cards were used at markets on Broad Street in New Orleans. In light of this information, agents from

---

[1] The facts are taken from the testimony and evidence adduced at the suppression hearing.

[2] Additional details are found in the warrant exhibits, which were admitted at the suppression hearing: The victim noticed a black male standing near the intersection. She watched as he walked in front of her vehicle and pointed a handgun at her. He then walked around to the driver's side of the vehicle and demanded she "Get out the car, get out the car, get them out the car," all while pointing a gun at her and her children, who were seven and nine years old. She unlocked her car door, accidently hit her horn, and told her kids to run home. He demanded her phone, and she complied. The suspect entered the vehicle and fled. The victim ran home and called 9-1-1. She described the perpetrator as a black male with a medium build and in his 30's or 40's. He was wearing a dark-colored hooded sweatshirt with dark pants. At least some exhibits include that the sweatshirt had a contrasting color across the front. He had a black handgun. Her purse and wallet with three credit cards and her identification, as well as other items, were in her vehicle. (State's Exhibits 1, 3, 4 and 8).

the FBI Violent Crimes Task Force, who were enlisted to help canvass the New Orleans area, went to one of the markets and spoke with a clerk who stated a homeless person known from the area attempted to use the card and left after the card was declined. After completing their investigation in the store and viewing the surveillance video of the individual using the card, the agents exited the store and discovered that the victim's vehicle was in the parking lot. The officers pursued the vehicle as it left that location but lost sight of it. They then returned to the store to rewatch the surveillance video, which showed the vehicle arrive, and the suspect exit the driver's seat, go into the store, purchase an item, and then return to the vehicle. At that time, the officers did not have a positive identification or name of the person, but they knew this person matched the physical and clothing descriptions given by the victim.

The officers then reconvened at the investigations bureau, where they gathered the video evidence, reviewed it, and obtained still photographs from the store's surveillance video. On the same day as the incident, the victim was shown two photographs from the surveillance video and positively identified the individual in the photographs as the perpetrator. When the victim was asked what she specifically recognized, she responded and wrote on one of the photographs, "The sweatshirt is what guy was wearing. His eyes is what I remember in these pictures." The victim signed and dated the photographs and further wrote that she was "100 % confident."

The officers next disseminated a "be on the lookout" flyer and, as a result, received a tip through Crime Stoppers. The tip gave the specific name of "Osiris Scott" as the person who committed the crime. Upon receipt of the name, the officers utilized additional law enforcement databases to obtain booking and driver's license photographs for comparison. Based on his comparison of the law

enforcement database photographs to the possible suspect, Detective Hymel believed the person to be the same.

Detective Hymel further testified that upon running the suspect's name, the officers discovered that a traffic stop had been conducted on a person with this name. In connection with this stop, a field interview card had been filled out, which included the vehicle's description and license plate number. Once it was realized the vehicle was a rental, Detective Hymel contacted Enterprise, who confirmed that Osiris Scott was the renter. Further, Detective Hymel obtained an address for defendant from the rental car contract. On February 8, 2021, the same day the tip was received, the officers set up surveillance at this residence located at 5208 Arbutus Court. Although a vehicle matching the rental's description arrived and two occupants exited, no identifications could be made due to poor lighting. Surveillance was continued the following day, and a black male fitting the physical description of defendant was observed. After the suspect entered the vehicle, the officers conducted a traffic stop and positively identified defendant, who was then transported to the investigations bureau.

Based on the information known, Detective Hymel obtained a search warrant for the Arbutus Court residence in Marrero. As a result of the search, the officers seized a black iPhone with a black case and a black LG phone. Detective Hymel also obtained a search warrant for the vehicle defendant was driving at the time of the stop; however, that search produced no evidence.[3]

On February 9, 2021, defendant gave a videotaped statement to Lieutenant Frank Renaudin. Prior to beginning the interview, Lieutenant Renaudin presented defendant with a rights of arrestee or suspect form. Defendant signed the portion

---

[3] As part of their investigation, police officers interviewed Ms. Sage Hollingsworth, who resided with defendant and their children at the residence. When shown one of the surveillance photographs of a person believed to be defendant, she said it "looks like Osiris." According to the detective, she did not want to implicate defendant or give any further statement about his activity.

of the form acknowledging he was read his rights, but he did not sign the waiver of rights portion of the form. At the suppression hearing, Detective Hymel testified that when Lieutenant Renaudin asked defendant if he wanted to sign the bottom portion of the form or if he wanted a lawyer, defendant stated that he wanted a lawyer. Lieutenant Renaudin then asked defendant if he wanted a lawyer now or if he would still like to hear what the lieutenant had to say, to which defendant replied, "Yeah, I want a lawyer, but I want to hear what you have to say." Following this exchange, defendant volunteered, "I didn't want to hurt nobody." Defendant admitted during the interview that he took the vehicle and that the items used in the robbery, including the gun and the sweatshirt, were discarded in New Orleans.

Defendant was thereafter arrested and transported to the Jefferson Parish Correctional Center for booking. While waiting for his evaluation to allow entry into the correctional center, defendant wrote an apology letter to the victim. In this letter, he apologized to the victim "for everything," including taking her car. He conveyed that he did not want to hurt her or her kids, and that the gun was not real. He explained that he did not take her money "or anything" but just wanted to get a "fix."

Detective Hymel also obtained search warrants for defendant's cell phones, which produced relevant GPS locations and text messages. At the suppression hearing, Detective Hymel testified that the analysis of the cell phone data provided GPS locations that "corroborated the locations of the suspect, prior to the robbery; during the robbery and then later on corroborated in proximity with ALPR locations as well." Further, the analysis of the cell phones revealed text messages sent on the date of the robbery, which read, "I acquired some credit cards," and "How do I get money off of credit cards?"

In addition, Detective Hymel obtained a search warrant for defendant's DNA, which was compared to a swab from the steering wheel of the victim's vehicle.[4] According to the results, defendant was "most likely … the main contributor." Defendant was also a contributor of the DNA from an item found in the vehicle.

After considering the testimony and evidence presented, as well as the arguments of counsel, the trial court denied defendant's motions to suppress identification, physical evidence, and inculpatory statements. Defense counsel objected to the court's rulings and now seeks review of the denial of his motions to suppress identification and inculpatory statements.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assigned error, defendant contends that the trial court abused its discretion in denying his motion to suppress identification. Defendant specifically contends that identification procedure was both suggestive and unreliable as the victim's identification of him was accomplished by a two-photograph display that unfairly focused on defendant.

Generally, a defendant has the burden of proof on a motion to suppress an out-of-court identification. *See* La. C.Cr.P. art. 703(D); *State v. Bradley*, 11-1060 (La. App. 5 Cir. 9/25/12), 99 So.3d 1099, 1105, *writ denied*, 12-2441 (La. 5/3/13), 113 So.3d 208. In order to suppress an identification, a defendant must first prove that the identification process was suggestive. *State v. McQuarter*, 19-594 (La. App. 5 Cir. 11/25/20), 305 So.3d 1055, 1073, *writ not considered*, 21-295 (La. 8/6/21), 322 So.3d 247. An identification procedure is considered suggestive if the attention of the witness is unduly focused on the defendant during the procedure. *State v. Jones*, 09-688 (La. App. 5 Cir. 2/9/10), 33 So.3d 306, 318.

---

[4] The victim's vehicle was recovered in New Orleans at approximately 9:00 p.m. on the night of the robbery.

If the defendant succeeds in establishing that the identification procedure was suggestive, the defendant must then show that there was a substantial likelihood of misidentification as a result of the identification procedure. It is the likelihood of misidentification that violates due process, not the mere existence of suggestiveness. *State v. Bradley*, 99 So.3d at 1106. Generally, single photograph identifications are viewed by the courts with suspicion. However, their suggestive nature will not *per se* preclude admissibility unless there was a substantial likelihood of misidentification under the totality of the circumstances. *State v. Jones*, 33 So.3d at 318.

Under *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), the factors the courts must examine to determine, from the totality of the circumstances, whether the suggestiveness presents a substantial likelihood of misidentification include: the witness' opportunity to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. *State v. McQuarter*, 305 So.3d at 1073. A trial court's determination of the admissibility of an identification should be accorded great weight and will not be disturbed on appeal unless the evidence reveals an abuse of discretion. *Id.*

In the present case, we find that defendant failed to prove the identification procedure was suggestive. The photographs were obtained from the surveillance video close in time to the robbery, and the procedure utilized was necessary in the investigation to timely identify the suspect in efforts to apprehend him. Nothing suggested that the victim was told the perpetrator was in the photographs or that she had to identify this individual as the perpetrator. Instead, Detective Hymel testified that the victim was asked what she recognized in the photographs. Consistent with the detective's testimony, the victim's handwriting on one of the

surveillance photographs indicates that she remembered the sweatshirt the perpetrator was wearing and his eyes. The detective stressed that the photographs were used for confirmation that the person in the photographs was the same person that robbed her. He explained that a multi-person photographic line-up was not feasible at this point in the investigation because the name of the suspect was unknown.

Nevertheless, even if the identification procedure was considered suggestive, defendant failed to prove there was a substantial likelihood of misidentification as a result of the identification procedure. Although the victim did not testify, the testimony of the detective and the exhibits introduced at the suppression hearing support our determination that there was no substantial likelihood of misidentification when considering the *Manson* factors and the totality of the circumstances.

The victim apparently had a clear opportunity to view the perpetrator on the day of the incident, which took place at 7:00 a.m. She was close enough to hear what he said while held at gunpoint and to describe what he was wearing, give a physical description of him, and look at his eyes. From the details presented in the exhibits, the victim observed the perpetrator while he stood near the intersection, walked in front of her vehicle, and walked to the driver's side of her vehicle.

The victim portrayed a great degree of attention. Although the description of being a black male in dark clothing could be considered non-specific, she remembered his hooded sweatshirt and his eyes. Further, the exhibits reflect that she described the perpetrator as a black male with a medium build and suggested that he was in his 30's or 40's. She described him as wearing a dark-colored hooded sweatshirt with a contrasting color across the front with dark pants, while in possession of a black handgun. The exhibits also indicate that the victim recalled what the perpetrator said and remembered details of the incident, such as

unlocking her vehicle, unintentionally hitting the horn, and telling her kids to run home.

As for accuracy of the description, the rights of arrestee or suspect form and the interview reveal that defendant was forty years old. The surveillance photographs depict a black male with a medium build wearing a black hooded sweatshirt with a contrasting color across the front and dark pants, which was consistent with the victim's description of the suspect. Further, the victim relayed that she was 100 percent confident in her identification, which was made the same day as the robbery.

Under these circumstances, we find that the photographic identification, even if suggestive, was reliable because there was no substantial likelihood of misidentification. Accordingly, we find no abuse of discretion in the trial court's denial of defendant's motion to suppress identification.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assigned error, defendant contends that the trial court abused its discretion in denying his motion to suppress inculpatory statements where defendant refused to sign the waiver of rights form and instead explicitly requested the assistance of counsel.

The testimony and evidence adduced at the suppression hearing, including defendant's recorded statement and rights of arrestee form, reflect that Lieutenant Renaudin reviewed the rights form with defendant and that defendant signed the form acknowledging that he was read his rights. Lieutenant Renaudin also discussed the waiver of rights portion of the form with defendant, which defendant did not sign. At some point during the discussion of the waiver of rights, defendant stated that he wanted a lawyer. Lieutenant Renaudin then asked defendant if he wants a lawyer right now or wants to sit and listen to what he has to say. Defendant responded, "Yeah, I want a lawyer, but I want to hear what you

have to say." The lieutenant then explained the investigation and the evidence the police had collected showing defendant's involvement in the carjacking. Lieutenant Renaudin encouraged defendant to tell his side of the story and also talked about closure and rebuilding his life. During this exchange, defendant stated, "I didn't want to hurt nobody." Defendant explained the gun was not real, and he just wanted the car. Further, defendant relayed that the items used in the robbery, including the gun and sweatshirt, were discarded in New Orleans.

Lieutenant Renaudin also gave defendant the opportunity to write an apology letter to the victim and her kids, providing him with examples of things he could say if he wanted to. Defendant did not write anything in the interview room, but later wrote a letter, apologizing to the victim for everything, including taking her car. He expressed that he did not want to hurt her or her kids, and the gun was not real. He explained that he did not take any money or anything but just wanted to get a "fix."

After considering the evidence presented at the suppression hearing, the trial court denied defendant's motion to suppress inculpatory statements, finding that despite defendant's request for counsel, defendant voluntarily, and on his own initiative, subsequently made the admissions regarding his involvement in the crime. Defendant now contends that the trial court abused its discretion in denying his motion to suppress, asserting that he clearly and unequivocally stated twice that he wanted a lawyer, and that despite his invocation of this right, the officer continued the interview and attempted to dissuade him of his explicit request for an attorney. Defendant maintains that the interview should have immediately stopped upon his request for counsel, and therefore, any admissions stemming from the violation of his right to counsel should be suppressed.

The State has the burden of proving the admissibility of a purported confession or statement by the defendant. La. C.Cr.P. art. 703(D); *State v. Arias-*

*Chavarria*, 10-116 (La. App. 5 Cir. 9/28/10), 49 So.3d 426, 433, *writ denied,* 10-2432 (La. 2/25/11), 58 So.3d 460. Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove, beyond a reasonable doubt, that the defendant was first advised of his *Miranda* rights,[5] that he voluntarily and intelligently waived them, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducements, or promises. *Id.*; *State v. Turner*, 21-186 (La. App. 5 Cir. 6/23/21), -- So.3d --. This Court has declared that a confession is coerced if an individual's will was overborne or if his confession was not the product of a rational intellect and a free will, whether by physical intimidation or psychological pressure. *State v. Castro*, 09-887 (La. App. 5 Cir. 5/25/10), 40 So.3d 1036, 1044, *writ denied*, 10-1323 (La. 1/7/11), 52 So.3d 884.

A determination of voluntariness is made on a case-by-case basis depending on the totality of the facts and circumstances of each situation. The admissibility of a confession or statement is a determination for the trial judge, and the judge's conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement are entitled to great weight and will not be overturned unless unsupported by the evidence. *State v. Arias-Chavarria*, 49 So.3d at 433.

In the present case, defendant argues that his fundamental right to counsel was violated because the officer continued the interview after defendant invoked his right to counsel and refused to sign the waiver of rights form. In *Miranda v. Arizona*, 384 U.S. at 444-45, 86 S.Ct. at 1612, the United States Supreme Court found that if a suspect indicates "in any manner and at any stage of the process that

---

[5] If a statement is a product of custodial interrogation, the State must show that the person was advised before questioning of his right to remain silent, that any statement he makes may be used against him, and that he has a right to counsel, either retained or appointed. *See Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966).

he wishes to consult with an attorney before speaking there can be no questioning." If the individual indicates at any time that he wishes to remain silent, or requests an attorney, the interrogation must end. In *Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1884-85, 68 L.Ed.2d 378 (1981), the Supreme Court further held that when an accused either before or during interrogation asks for counsel, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation, even if he has been advised of his rights. The accused is not subject to further interrogation by the authorities until counsel is present, unless the accused himself initiates further communication, exchanges, or conversations with the police.

Under Fifth Amendment jurisprudence, however, nothing prevents an accused party from changing his mind and giving a statement after he has previously declined to do so, as long as the statement is voluntary and intelligently made. *State v. Aguliar-Benitez*, 17-361 (La. App. 5 Cir. 12/10/18), 260 So.3d 1247, 1257, *writ denied*, 19-147 (La. 6/3/19), 272 So.3d 543. When a defendant invokes his *Miranda* right to counsel, the admissibility of a subsequent confession is determined by a two-step inquiry: 1) did the defendant initiate further conversation or communication; and 2) was the waiver of the right to counsel knowing and intelligent under the totality of the circumstances. *State v. Turner*, *supra; State v. Landry*, 19-486 (La. App. 1 Cir. 2/21/20), 297 So.3d 8, 19.

For the reasons that follow, we find no abuse of discretion in the trial court's denial of defendant's motion to suppress inculpatory statements. We first note that defendant's failure to sign the waiver of rights form does not automatically require suppression of his statements. In the present case, at the beginning of the video recorded interview, defendant was advised of his rights as set forth on the rights of arrestee or suspect form. Defendant signed the portion of the form acknowledging that he was read his rights, but he did not sign the waiver of rights portion of the

form.  However, the video of the interview reflects that the lieutenant specifically told defendant he did not have to sign the waiver portion and instead could simply tell him he wanted to speak with him, suggesting that would be sufficient.

*Miranda* waivers may be explicit or implicit, and their validity turns on the totality of the circumstances surrounding the statement.  *State v. Ross*, 95-1798 (La. 3/8/96), 669 So.2d 384, 386.  The defendant's failure to sign the waiver of rights form does not in and of itself require suppression of his statement.  *State v. Wilson*, 46,708 (La. App. 2 Cir. 12/14/11), 79 So.3d 1265, 1269, *writ denied*, 12-126 (La. 5/4/12), 88 So.3d 462.  In the present case, defendant was told that he did not need to sign the waiver of rights and could just verbalize that he wanted to speak with the officer.  We do not find that these circumstances equate to a refusal to sign the waiver as suggested by defense counsel.

Further, we find that the officer's continuation of the interview subsequent to defendant's request for counsel did not require suppression of the statements because the statements were not given in response to police interrogation but rather were given voluntarily by defendant.  In *State v. Aguliar-Benitez*, 260 So.3d at 1256-60, this Court was faced with an issue similar to the one presented herein and found no abuse of discretion in the trial court's denial of the defendant's motion to suppress the statement given after he asserted his right to counsel.  In that case, the record showed that the defendant was advised of his rights and indicated he did not want to make a statement without a lawyer present.  The officers testified that once the defendant invoked his right to counsel, they did not ask any additional questions but rather explained the disclosures the victim had made to the police.  After hearing the evidence against him, the defendant told the officers, "you know, there's demons and, you know, I did something," and the officers told the defendant they could not discuss the case in a question-and-answer format because he requested a lawyer.  At that point, according to the officers, the defendant

changed his mind and stated that he wished to make a statement without a lawyer present and gave the incriminating recorded statement. On appeal, the defendant argued that the officers' discussion with him of the victim's preliminary disclosures was a coercive interrogation tactic and constituted the functional equivalent of interrogation. However, this Court recognized that jurisprudence supports the conclusion that mere disclosure of evidence and potential charges against a suspect, without more, is not interrogation under the Fifth Amendment.

This Court further explained that for the conduct of police to be the functional equivalent of interrogation, it must be more than declaratory statements of incriminating evidence linking the suspect to the crime. This Court explained that under Louisiana law, it is permissible for an officer, even after a suspect invokes his right to counsel and his privilege against self-incrimination, to inform the suspect of the evidence linking the suspect to the crime, and without more, the disclosure of evidence does not rise to the functional equivalent of direct questioning prohibited under Fifth Amendment jurisprudence. This Court determined that the officers immediately cut off questioning after the defendant invoked his right to counsel, and the officers informed the defendant of the evidence the State had linking the defendant to the crime. Since the record did not indicate that the officers went beyond disclosing the evidence against the defendant, this Court found no abuse of discretion in the district court's denial of the defendant's motion to suppress.

In the present case, defendant was asked if he wanted to have an attorney at that time or listen to the lieutenant. He chose to listen. Thereafter, Lieutenant Renaudin did not question defendant but rather explained the investigation and how the evidence led to defendant. In response to this explanation, defendant volunteered, on his own, without questioning, that he did not want to hurt anyone. After defendant initiated this statement, Lieutenant Renaudin then discussed

closure and rebuilding his life. After being given an opportunity to tell his side of the story, defendant provided more statements, on his own, incriminating himself in the crime.

As the totality of the circumstances in the present case reflect that defendant's incriminating statements were initiated by him, and not in response to police questioning, and that defendant's waiver of his right to counsel was knowing and intelligent despite his failure to sign the waiver of rights form, we find no abuse of discretion in the trial court's denial of defendant's motion to suppress the statements made subsequent to his request for counsel. Accordingly, the arguments raised by defendant in this assigned error are without merit.

## ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990). Our review of the record reveals no errors that require corrective action.

Accordingly, for the reasons set forth herein, we find no abuse of discretion in the trial court's denial of defendant's motions to suppress identification and statements, and accordingly, we affirm defendant's convictions and sentences.

## AFFIRMED

STATE OF LOUISIANA                    NO. 22-KA-330

VERSUS                                FIFTH CIRCUIT

OSIRIS L. SCOTT                        COURT OF APPEAL

                                      STATE OF LOUISIANA


**JOHNSON, J., DISSENTS, IN PART, WITH REASONS**

I, respectfully, dissent from the majority opinion on the issue of whether the trial court abused its discretion in denying Defendant, Osiris L. Scott's, motion to suppress the inculpatory statements made during the February 9, 2021 custodial interrogation.

During the interrogation, when asked by Lieutenant Renaudin if he wanted a lawyer, Defendant answered affirmatively. Lieutenant Renaudin then asked Defendant if he wanted to hear about the investigation, to which Defendant agreed. Lieutenant Renaudin then explained the evidence of the investigation that led the officers to Defendant. At the end of his explanation, Lieutenant Renaudin stated, "The only question that remains is 'why?' Ok. Only you hold the answer to that question, and this is your opportunity in our investigation for you to explain, 'why?'" Lieutenant Renaudin then started to explain that answering "why" would provide the closure needed for the case. Immediately prior to Defendant confessing his actions in the crime, Lieutenant Renaudin stated, "Help me tell your story. You're the only person that's going to be able to tell that right there."

As cited in the majority opinion, the State has the burden of proving the admissibility of a purported confession or statement by the defendant. La. C.Cr.P. art. 703(D); *State v. Arias-Chavarria*, 10-116 (La. App. 5 Cir. 9/28/10), 49 So.3d 426, 433, *writ denied,* 10-2432 (La. 2/25/11), 58 So.3d

460. Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove, beyond a reasonable doubt, that the defendant was first advised of his *Miranda* rights,[1] that he voluntarily and intelligently waived them, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducements, or promises. *Arias-Chavarria*, 49 So.3d at 433; *State v. Turner*, 21-186 (La. App. 5 Cir. 6/23/21) (unpublished writ disposition). This Court has declared that a confession is coerced if an individual's will was overborne or if his confession was not the product of a rational intellect and a free will, whether by physical intimidation or psychological pressure. *State v. Castro*, 09-887 (La. App. 5 Cir. 5/25/10), 40 So.3d 1036, 1044, *writ denied*, 10-1323 (La. 1/7/11), 52 So.3d 884. In *Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1884-85, 68 L.Ed.2d 378 (1981), the Supreme Court further held that when an accused either before or during interrogation asks for counsel, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation, even if he has been advised of his rights. The accused is not subject to further interrogation by the authorities until counsel is present, unless the accused himself initiates further communication, exchanges, or conversations with the police. *Id.*

Furthermore, when a defendant invokes his *Miranda* right to counsel, the admissibility of a subsequent confession is determined by a two-step inquiry: 1) did the defendant initiate further conversation or communication; and 2) was the waiver of the right to counsel knowing and intelligent under

---

[1] If a statement is a product of custodial interrogation, the State must show that the person was advised before questioning of his right to remain silent, that any statement he makes may be used against him, and that he has a right to counsel, either retained or appointed. *See*, *Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966).

the totality of the circumstances. *Turner*, *supra; State v. Landry*, 19-486 (La. App. 1 Cir. 2/21/20), 297 So.3d 8, 19. Police officers are not obliged to ignore spontaneous and unsolicited statements by someone in custody, as long as the statements do not result from police-initiated custodial interrogation or questioning reasonably likely to elicit an incriminating response. *State v. Leger*, 05-11 (La. 7/10/06), 936 So.2d 108, 128 (quotation omitted), *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007). A determination of voluntariness is made on a case-by-case basis, depending on the totality of the facts and circumstances of each situation. *Arias-Chavarria*, *supra*.

In this matter, I find that Defendant's confession to Lieutenant Renaudin is inadmissible because the State did not prove that Defendant validly waived his rights. Specifically, the State did not prove that Defendant initiated further conversation with Lieutenant Renaudin during the interrogation. The evidence clearly shows that Lieutenant Renaudin did not stop the interrogation after Defendant requested an attorney; and, after explaining the evidence in the investigation, lulled Defendant into giving a statement by encouraging Defendant to tell his side of the events. The conversation between Defendant and Lieutenant Renaudin never ceased. Thus, it was impossible for Defendant to initiate further conversation by giving a spontaneous and unsolicited statement. Furthermore, Lieutenant Renaudin solicited Defendant's confession.[2] Those facts distinguish this case from facts of *State v. Aguliar-Benitez*, 17-361 (La. App. 5 Cir. 12/10/18), 260 So.3d 1247, 1257, *writ denied*, 19-147 (La. 6/3/19), 272 So.3d 543 (where the record failed to indicate that the officers' discussion went beyond disclosing the evidence against the defendant). Although

---

[2] *See, Turner*, *supra*; *Leger*, *supra*.

Lieutenant Renaudin did not ask Defendant any questions during the exchange, I find that allowing an officer to lull a defendant into making an incriminating statement after the request for an attorney has been clearly invoked will only erode the defendant's rights set forth in *Miranda*. (*See Id.*, where it was held that the *Miranda* rule is designed to protect an accused from giving a tainted statement under the pressures of interrogation by police, regardless of whether the pressure is from police badgering, overreaching, or subtle but repeated efforts of law enforcement to influence the suspect to waive his right to silence.).

For the foregoing reasons, I would find that the trial court erred in denying Defendant's motion to suppress the inculpatory statements made during the February 9, 2021 custodial interrogation. In all other respects, I agree with the majority opinion.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**MARCH 15, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 22-KA-330

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE E. ADRIAN ADAMS (DISTRICT JUDGE)
ANNE M. WALLIS (APPELLEE)                THOMAS J. BUTLER (APPELLEE)

### MAILED
BRUCE G. WHITTAKER (APPELLANT)          HONORABLE PAUL D. CONNICK, JR.
ATTORNEY AT LAW                         (APPELLEE)
LOUISIANA APPELLATE PROJECT             DISTRICT ATTORNEY
POST OFFICE BOX 791368                  ZACHARY L. GRATE (APPELLEE)
NEW ORLEANS, LA 70179                   ASSISTANT DISTRICT ATTORNEY
                                        TWENTY-FOURTH JUDICIAL DISTRICT
                                        200 DERBIGNY STREET
                                        GRETNA, LA 70053